[No. C027317. Third Dist. July 23, 1998.]

CHRISTY SANTANGELO, Plaintiff and Appellant, v.
ALLSTATE INSURANCE COMPANY, Defendant and Respondent.

806

**COUNSEL**

Mastagni, Holstedt & Chiurazzi and Albert S. Wong for Plaintiff and Appellant.

Gallawa, Brown & Kroesch, Douglas A. Kroesch and Nicole M. DeSantis for Defendant and Respondent.

---

## OPINION

**SIMS, Acting P. J.**—Christy Santangelo appeals from the trial court's order denying her petition to compel arbitration against Allstate Insurance Company (Allstate). She contends the trial court erred in concluding she lost the right to arbitrate by failing to conclude arbitration within five years of initiating arbitration, pursuant to Insurance Code section 11580.2, subdivision (i), (hereafter, section 11580.2(i); further statutory references are to the Insurance Code unless otherwise stated). Appellant claims this was an improper retroactive application of a new statute enacted while her case was pending. We shall affirm the trial court's order.

### FACTUAL AND PROCEDURAL BACKGROUND

On March 3, 1990, appellant (then age 11) was a passenger in a vehicle driven by nonparty Doris Preston which was involved in a motor vehicle accident with an uninsured motorist. Appellant seeks to recover under the uninsured motorist provision of Ms. Preston's insurance policy with Allstate.

On March 4, 1991, appellant instituted uninsured motorist arbitration with Allstate. Her attorney's letter to Allstate stated in part: "[W]e agreed in order to protect my client's uninsured motorist claim that I would have to make a demand for arbitration under the applicable insurance policy, as well as, 11580.2 et seq. of the Insurance Code. Therefore, you may consider this a demand for arbitration under the uninsured motorist provisions of the applicable insurance policy. [¶] Furthermore, pursuant to our agreement, it is my understanding that while you should consider this a formal demand for arbitration, we agreed that we would await the results of the defense medical scheduled for April 1, 1991, prior to initiating the arbitration proceedings in hopes that we may conclude this matter by settlement. . . ."

Apparently, in March 1993, the parties reached a settlement, but, as we discuss *post*, it was never brought to fruition for reasons not apparent from the record.

On July 25, 1994, Allstate's attorney wrote to Attorney Ilija Cvetich, at the firm of Mastagni, Holstedt & Chiurazzi, asking if he represented appellant and, if so, they needed to "get this matter moving."

Cvetich apparently contacted Allstate's counsel in late September 1994, confirming his representation of appellant and prompting Allstate's counsel to send a letter to Cvetich on October 6, 1994, demanding arbitration.[1]

In the meantime, on September 16, 1994, the American Arbitration Association (AAA) Center for Mediation wrote to Cvetich, stating it had been advised Cvetich was now representing appellant and asking whether appellant still wanted to proceed with arbitration.

Allstate scheduled a medical examination for appellant for January 11, 1995.

On March 10, 1995, Allstate's attorney wrote to the Mastagni law firm, stating his understanding that Cvetich was no longer with the firm and asking whether Cvetich took the file with him or who was handling the case. Allstate's counsel also indicated he had solicited a demand on February 3, 1995, but received no response, and was demanding arbitration.

On June 19, 1995, the AAA Center for Mediation wrote: "Repeated attempts to reach you by telephone have been unsuccessful, so I am writing to invite you to arbitrate th[is] matter. . . ."

On January 1, 1996, a new amendment to section 11580.2 went into effect (fn. 4, *post*), requiring that uninsured motorist arbitrations must be completed within five years after institution of the arbitration proceeding.

On January 9, 1996, Allstate's counsel wrote to Cvetich and the Mastagni firm, expressing continued uncertainty over who was representing appellant and expressing an intent to file a petition to compel arbitration.

On January 18, 1996, Attorney Albert Wong from the Mastagni firm responded, indicating he was representing appellant, it appeared an arbitrator had already been selected, and Allstate could "go ahead and schedule the Arbitration Hearing 90 days from today," though a settlement could hopefully be negotiated before then.[2]

In early February 1996, Allstate advised it was offering $16,000 in settlement but was no longer willing to pay any future medical expenses in addition to the $16,000.

March 4, 1996, marked five years from appellant's March 4, 1991, letter demanding arbitration.

---

[1] Since appellant had already made the arbitration demand required by section 11580.2, we do not view Allstate's subsequent demands for arbitration as a demand under that statute.

[2] Note this would be too late if the five-year period applies.

In early July 1996, appellant's counsel indicated he was waiting to hear from a doctor who examined appellant in early June 1996.[3] The record reflects (through the declaration of appellant's attorney) that the purpose of this medical examination was to satisfy appellant's mother concerning the prospect of future medical expenses.

On November 27, 1996, Allstate's attorney wrote to appellant's counsel: "As I recently reviewed my file I noted that the original demand for uninsured motorist arbitration in this matter is dated March 4, 1991. Pursuant to . . . § 11580.2(i)(2)(A) uninsured motorist arbitrations must be concluded within five years from the institution of the arbitration proceeding. More than five years has now elapsed and it appears to me that Ms. Santangelo is precluded from pursuing this claim further."

On April 16, 1997, appellant filed her petition to compel arbitration. Her attorney's declaration asserted: "Attorneys Stephen Duggan, Kenneth Miller and Ilija Cvetich represented Christy Santangelo prior to January, 1996. Several demands for arbitration were made by attorneys for both sides, however, an arbitration date was not scheduled. In 1993, a settlement was made, but was withdrawn. Mr. Cvetich left the [Mastagni] firm . . . in January, 1995, and retained . . . Santangelo's file. Thereafter, on or about January, 1996, Ms. Santangelo's guardian and mother retained [the Mastagni firm] to pursue this claim." Appellant's counsel further attested: "On January 18, 1996 I made a formal request for arbitration in this matter. Shortly thereafter, settlement negotiations commenced with defense counsel, resulting in a verbal agreement not to schedule an arbitration date to allow . . . Santangelo to seek further medical evaluations. It is my belief any delay in scheduling the arbitration was made in hope of resolving this case short of arbitration."

In opposition to the petition to compel arbitration, Allstate's attorney submitted a declaration denying any agreement to delay the arbitration. Allstate's attorney attested: "In my discussions in correspondence with [appellant's attorneys], I never agreed to waive any time limits or encouraged Ms. Santangelo, her mother, or the attorneys representing them, to delay this matter."

The trial court issued a tentative ruling granting the petition to compel arbitration, because Allstate's letters demanding arbitration in October 1994

---

[3]It is apparent from the record that this was not the first medical examination. Appellant was examined in January 1995 and a medical report issued in February 1995. The record suggests the 1996 examination was for the benefit of appellant's mother, who apparently was holding out for future medical damages.

and March 1995 prevented the court from finding that arbitration was initiated on March 4, 1991.

A hearing was held, at which Allstate argued that if the March 4, 1991, letter did not initiate arbitration, then appellant's claim was barred by failure to initiate arbitration within one year of the accident.

On June 30, 1997, following a hearing, the trial court issued a written order vacating its tentative ruling and denying the petition to compel arbitration. The trial court found arbitration was initiated when appellant sent the March 4, 1991, letter formally demanding arbitration. Since arbitration was not concluded within five years of that date, and since appellant produced no evidence it was impossible or impracticable timely to conclude arbitration, the petition was foreclosed pursuant to section 11580.2(i). The court's order further stated section 11580.2(i) was procedural in nature and therefore could be retroactively applied to this case.

The trial court denied appellant's subsequent motion for reconsideration.

Appellant filed a notice of appeal from the order denying the petition to compel arbitration and from the trial court's denial of reconsideration. However, her appellate brief makes no contention with regard to the reconsideration motion, and we therefore need not consider that matter.

DISCUSSION

I

An order denying a petition to compel arbitration is an appealable order. (Code Civ. Proc., § 1294, subd. (a).)

II

Section 11580.2(i),[4] which addresses uninsured motorist coverage, requires that uninsured motorist arbitration be (1) initiated within one year of

---

[4]Section 11580.2(i) provides in part: "(1) No cause of action shall accrue to the insured under any policy or endorsement provision issued pursuant to this section unless one of the following actions have been taken within one year from the date of the accident:

"(A) Suit for bodily injury has been filed against the uninsured motorist, in a court of competent jurisdiction.

"(B) Agreement as to the amount due under the policy has been concluded.

"(C) The insured has formally instituted arbitration proceedings by notifying the insurer in writing sent by certified mail, return receipt requested. Notice shall be sent to the insurer or to the agent for process designated by the insurer filed with the department.

"(2) Any arbitration instituted pursuant to this section shall be concluded either:

the date of accident, and (2) completed within five years from the institution of arbitration. The five-year limitation was added to the statute in 1995, effective January 1, 1996 (Stats. 1995, ch. 738, § 1), while this case was pending.

## A. *Institution of Arbitration*

At the end of her brief, appellant briefly argues that, even assuming the five-year period for completion of arbitration applies to her, there are insufficient facts to indicate that arbitration was instituted on March 4, 1991, since her demand letter of that date assertedly indicated there was an agreement to defer the commencement until some future (unspecified) date after the independent medical examination scheduled for April 1, 1991.

We question whether appellant presented this factual theory in the trial court during proceedings on the petition to compel arbitration. Since it appears she did not, she is precluded from changing her theory on appeal.[5] (*Richmond* v. *Dart Industries, Inc.* (1987) 196 Cal.App.3d 869, 874 [242 Cal.Rptr. 184].)

Moreover, even assuming she did not waive the issue by failing timely to raise it in the trial court, her argument is without merit. Thus, appellant relies on *Hambrecht & Quist Venture Partners* v. *American Medical Internat., Inc.* (1995) 38 Cal.App.4th 1532, 1547 [46 Cal.Rptr.2d 33], for the proposition that California courts have permitted parties to extend or shorten limitations periods. However, *Hambrecht* noted that, by statute (Code Civ. Proc., § 360.5), agreements to extend the limitations period are permissible "provided they are in writing and do not extend the limitations period for more than four years at a time . . . ." (38 Cal.App.4th at p. 1547.) The statute cited by *Hambrecht* provides that a waiver to a statute of limitations defense is ineffective "unless the waiver is in writing and signed by the person

---

"(A) Within five years from the institution of the arbitration proceeding.

"(B) [Time limitation if insured has a workers' compensation claim.]

"(3) The doctrines of estoppel, waiver, impossibility, impracticability, and futility apply to excuse a party's noncompliance with the statutory timeframe, as determined by the court.

"(4) Parties to the insurance contract may stipulate in writing to extending the time to conclude arbitration."

[5]In connection with her motion for reconsideration, appellant did submit a copy of a form "Demand for Arbitration" dated February 1992 and apparently prepared by Allstate. She cites that document on appeal. However, she fails to show any reason to explain her failure to produce this document earlier. Since she fails to challenge the trial court's denial of reconsideration and fails to justify her failure to produce the document earlier, we need not consider it. In any event, as we discuss *post*, plaintiff made the statutory demand for arbitration in March 1991, and subsequent demands by Allstate in an effort to get the case moving did not constitute new statutory demands restarting the clock on completion of arbitration.

obligated." (Code Civ. Proc., § 360.5.) Here, there was no written agreement signed by the party to be obligated—Allstate, and thus there is no valid waiver under the authority cited by appellant.

Moreover, our reading of the March 4, 1991, letter leads us to conclude the letter constituted formal institution of arbitration pursuant to section 11580.2 and merely indicated the scheduling of the hearing would be put off until after the medical examination scheduled for the following month. Thus, the letter from appellant's attorney stated "[W]e agreed in order to protect my client's uninsured motorist claim that I would have to make a demand for arbitration under the applicable insurance policy [and section] 11580.2 . . . . [Y]ou may consider this a demand for arbitration under the uninsured motorist provisions of the applicable insurance policy. . . . [¶] . . . [Y]ou should consider this a formal demand for arbitration . . . ." In view of these statements, the letter's further comment that the parties agreed to await the April 1991 medical examination "prior to initiating the arbitration proceedings" plainly referred to deferral of scheduling the hearing. We conclude the letter constituted a demand for arbitration pursuant to section 11580.2.[6]

We recognize the record contains subsequent correspondence in which Allstate "demanded" arbitration. However, since we conclude appellant already made the statutory demand in March 1991, Allstate's subsequent demands, which were made in an effort to get the case moving, did not restart the clock on the time to complete arbitration.

We conclude appellant has waived the contention regarding an agreement to extend the one-year period for institution of arbitration, and even assuming the matter is not waived, appellant's March 4, 1991, letter constituted formal institution of arbitration pursuant to section 11580.2(i).

B. *Completion of Arbitration*

The next question is whether the five-year period for completion of arbitration applies to this case. Appellant argues the five-year limitation does not apply, because it was enacted in 1995 and did not become effective until January 1, 1996. She claims application of the provision to her case would constitute retroactive application violative of her due process rights. We disagree.

" 'A retrospective law is one which affects rights, obligations, acts, transactions and conditions which are performed or exist prior to the adoption of the statute.' " (*Aetna Cas. & Surety Co.* v. *Ind. Acc. Com.* (1947) 30 Cal.2d 388, 391 [182 P.2d 159].)

---

[6]At the time, section 11580.2(i) did not require (as it now does) delivery of a demand by certified mail, return receipt requested. (Stats. 1995, ch. 738, § 1; Stats. 1990, ch. 682, § 1, p. 3232.)

Thus, appellant's argument presupposes that, before enactment of the five-year time constraint in section 11580.2, she had an unlimited amount of time in which to complete arbitration. However, that supposition is incorrect.

Thus, even without the statutory time constraint of section 11580.2, contractual arbitrations have been held subject to dismissal for delay in prosecution under Code of Civil Procedure section 583.110 et seq., and we see no reason why that result would not have applied to uninsured motorist arbitrations. For example, *Burgess* v. *Kaiser Foundation Hospitals* (1993) 16 Cal.App.4th 1077 [20 Cal.Rptr.2d 488], held that although the statutes requiring mandatory dismissal of superior court actions not brought to trial within five years (Code Civ. Proc., § 583.310 et seq.)[7] do not directly apply to arbitration, the concept does apply, and a contractual arbitration may be dismissed for delay in prosecution. (16 Cal.App.4th at p. 1081 [contractual arbitration in medical negligence case]; see also *Young* v. *Ross-Loos Medical Group, Inc.* (1982) 135 Cal.App.3d 669, 673 [185 Cal.Rptr. 536] [Code of Civil Procedure statutes concerning mandatory dismissal for delay in prosecution applied to contractual arbitration in medical malpractice case]; 2 Clifford & Isler, Cal. Uninsured Motorist Law (5th ed. 1998) ¶ 19.35 [expressing view that dismissal-for-delay statutes (Code Civ. Proc., §§ 583.110-583.430) would apply to uninsured motorist arbitration].)

Similarly, in *Allstate Ins. Co.* v. *Gonzalez* (1995) 38 Cal.App.4th 783 [45 Cal.Rptr.2d 491], the Second District held an insured's protracted and unexplained delay in *initiating* uninsured motorist arbitration under the Code of Civil Procedure was unreasonable as a matter of law, and he thereby waived his right to arbitration, even though his demand was filed within the four-year limitations period for petitioning to compel arbitration of an uninsured motorist claim (Code Civ. Proc., § 337). (38 Cal.App.4th at pp. 789-793.) The appellate court said that when an arbitration agreement does not specify the time within which arbitration must be demanded, a reasonable time is allowed, and a party who does not demand arbitration within a reasonable time is deemed to have waived the right to arbitration. (*Id.* at p. 790.) We believe a similar principle applies to *completion* of arbitration once initiated.

Appellant claims cases such as *Burgess* are distinguishable, because they did not involve uninsured motorist arbitration. However, she fails to show

[7]Code of Civil Procedure section 583.310 provides: "An action shall be brought to trial within five years after the action is commenced against the defendant." Code of Civil Procedure section 583.360 provides in part: "(a) An action shall be dismissed by the court on its own motion or on motion of the defendant, after notice to the parties, if the action is not brought to trial within the time prescribed in this article."

why this should make a difference. She merely asserts uninsured motorist arbitration is governed by the Insurance Code and, since the Legislature saw fit to amend the Insurance Code to add a time limit, that must mean there was no time limit before the amendment. Yet appellant cites no authority that would preclude application of Code of Civil Procedure section 583.310 et seq. to uninsured motorist cases. Though not cited by the parties, we note section 11580.05 declares "this article expresses the total public policy of this state respecting the content of [motor vehicle insurance] policies . . . ." However, the issue before us does not concern the content of the policy.

■ The purpose of Code of Civil Procedure section 583.310 et seq. is to implement the Legislature's policy " ' " 'to discourage stale claims.' " ' " (*Roman* v. *Usary Tire & Service Center* (1994) 29 Cal.App.4th 1422, 1430 [35 Cal.Rptr.2d 329].) ■ "Arbitration is intended to be more expeditious than litigation." (*Burgess* v. *Kaiser Foundation Hospitals, supra,* 16 Cal.App.4th at p. 1081.)

Therefore, we believe that, even before enactment of section 11580.2's five-year period, appellant would have been subject to dismissal for delay in prosecution.

Appellant nevertheless suggests that in order to apply this amendment to her, it must be affirmatively shown that the Legislature intended that result. ■ However, "[i]n the absence of such an express declaration of legislative intent for retroactive application, a court may look to a variety of other factors to determine such legislative intent, such as the context of the legislation, its objective, the evils sought to be remedied, the history of the times and similar legislation, public policy, and/or contemporaneous statutory construction. [Citation.]" (*Borden* v. *Division of Medical Quality* (1994) 30 Cal.App.4th 874, 882 [35 Cal.Rptr.2d 905].) Thus, express legislative intent is not required. ■ Here, the prior case law and policy reasons we have already discussed are sufficient to conclude the amendment applies to this case.[8]

■ Even where it is found a statute is intended to apply to pending cases, there must remain reasonable time for a party to comply, in order to

---

[8]Though not cited by the parties, we note the legislative history of the amendment to section 11580.2(i) indicates there was no time limit for resolving uninsured motorist arbitration under the law before the amendment. (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 1602 (1995-1996 Reg. Sess.) Aug. 22, 1995; Assem. Com. on Insurance, Rep. on Assem. Bill No. 1602 (1995-1996 Reg. Sess.) May 9, 1995.) We construe that to mean there was no express provision in the Insurance Code. The legislative history also notes the amendment is similar to the five-year time frame of Code of Civil Procedure section 583.310. (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 1602 (1995-1996 Reg. Sess.) Aug. 22, 1995.)

avoid constitutional problems. "[W]here the change in remedy, as, for example, the shortening of a time limit provision, is made retroactive, there must be a reasonable time permitted for the party affected to avail himself of his remedy before the statute takes effect. If the statute operates immediately to cut off the existing remedy, or within so short a time as to give the party no reasonable opportunity to exercise his remedy, then the retroactive application of it is unconstitutional as to such party. [Citation.]" (*Rosefield Packing Co.* v. *Superior Court* (1935) 4 Cal.2d 120, 122-123 [47 P.2d 716] [application of statutory amendment concerning dismissal for delay in prosecution to pending case was permissible where plaintiff had almost a year after amendment went into effect to bring case to trial].) "[I]n order to render the retroactivity of the amendment [concerning dismissal for delay in prosecution] effective in any particular case, a reasonable time must elapse after the change in the remedy to permit the party affected to safeguard his right as against a mandatory dismissal. [Citations.]" (*Superior Oil Co.* v. *Superior Court* (1936) 6 Cal.2d 113, 116 [56 P.2d 950] [one year and five months was deemed reasonable].)

 Appellant argues that if the amendment to section 11580.2 applies to her, the five-year period should be calculated from the time the amendment went into effect, not the date she initiated arbitration. She cites uninsured motorist arbitration cases for the proposition that a new statutory time limit would apply to pending actions but would begin to run from the date of the statutory enactment. However, appellant fails to show that such a result is compelled in all cases or in this case. Thus, appellant cites *Niagara Fire Ins. Co.* v. *Cole* (1965) 235 Cal.App.2d 40 [44 Cal.Rptr. 889]. There, however, the amendment, which required that a demand for arbitration be made within one year of an accident, was enacted more than one year after the accident at issue in the case. Thus, application of the new statute would necessarily foreclose the claim without the claimant having had a reasonable opportunity to proceed under the amendment. That circumstance is not present in this case. *Pacific Indem. Co.* v. *Superior Court* (1966) 246 Cal.App.2d 63, 70 [54 Cal.Rptr. 470], held the one-year period for instituting uninsured motorist arbitration, though created by statute after occurrence of the accident at issue in the case, could be applied to the case and barred the injured party's right to arbitration where arbitration was demanded more than one year after the effective date of the statute. This does not help appellant in our case. Finally, appellant cites *Allstate Ins. Co.* v. *Orlando* (1968) 262 Cal.App.2d 858, 864 [69 Cal.Rptr. 702], where the court merely recited in dictum the conclusion of *Niagara* that the amendment requiring uninsured motorist claims to be made within one year of the accident could be applied to claims arising out of accidents which occurred prior to the amendment's effective date by calculating the one-year period. This was

dictum because in *Allstate* v. *Orlando,* the amendment preceded the accident. (262 Cal.App.2d at pp. 862, 864.) The appellate court affirmed judgment in favor of the insurer, rejecting the claimant's argument that the statute did not apply to insurance policies issued before the effective date of the amendment. None of these cases require reversal in the case before us.

Here, the statutory amendment (requiring completion of arbitration within five years after its initiation) became operative January 1, 1996, four years and ten months after appellant initiated arbitration. Thus, if the five-year limitation applies, she had only two months to complete arbitration. Under the circumstances of this case, we conclude this was a reasonable amount of time. Thus, this case involves arbitration, not trial, and as indicated, "[a]rbitration is intended to be more expeditious than litigation." (*Burgess* v. *Kaiser Foundation Hospitals, supra,* 16 Cal.App.4th at p. 1081.) Appellant demanded arbitration in March 1991. The medical examination was scheduled for April 1991. Although the record does not state whether that examination took place, an examination (or another examination) took place in January 1995, and the medical report issued in February 1995. By the time the statutory amendment went into effect, the parties had already picked an arbitrator.

When the new statute went into effect on January 1, 1996, appellant took no action to get her case going. On January 18, 1996, she told Allstate to "go ahead and schedule the Arbitration Hearing 90 days from today." However, even if the hearing had been set for that date, it would have been outside the five-year period. Appellant presents no reason whatsoever why the hearing could not have been held by March 4, 1996, the five-year mark. She does not contend she could not obtain a hearing date; she did not even try. It was not enough for her to tell Allstate to set the hearing. The burden was on appellant to move the case to completion. (*Allstate Ins. Co.* v. *Gonzalez, supra,* 38 Cal.App.4th at p. 792 ["the burden of prosecution [of arbitration] is always with the plaintiff or claimant"].)

Appellant argues equitable considerations should excuse her noncompliance with the statutory time frame, and Allstate should be estopped from asserting the five-year period, because appellant supposedly refrained from scheduling an arbitration hearing in reliance on Allstate's conduct. However, this presents questions of fact (*Berkeley Unified School Dist.* v. *State of California* (1995) 33 Cal.App.4th 350, 366 [39 Cal.Rptr.2d 326]), and appellant cites no evidence whatsoever of reliance, nor does she demonstrate any abuse of discretion in the trial court's determination. Moreover, she asserts reliance on an "implied agreement" to extend the date of arbitration until after a doctor's examination in 1996. However, Allstate presented its

attorney's declaration that there was no such agreement. The fact that yet another doctor's examination had been scheduled does not demonstrate an implied agreement to extend any limitations period. ■ "[T]he burden of prosecution [of arbitration] is always with the plaintiff or claimant." (*Allstate Ins. Co.* v. *Gonzalez, supra,* 38 Cal.App.4th at p. 792.) ■ The record demonstrates that at least one other medical examination had already been completed in early 1995, and the 1996 examination was apparently just to satisfy appellant's mother about the prospect for future problems. Additionally, even before the purported implied agreement, appellant's January 1996 request for Allstate to set the hearing asked for a hearing date 90 days later, which would have been too late anyway. We conclude appellant fails to establish any basis for estoppel or waiver by Allstate of the five-year period for completion of arbitration.

Appellant contends tolling provisions should apply, in that it was impractical and impossible to prosecute this case, since a settlement was reached at one point, and the time period that the settlement was pending should be excluded from any mandatory time to complete arbitration. We disagree with appellant's conclusion.

As support for tolling, appellant on appeal asserts a settlement was reached on March 19, 1993, and a minor's compromise hearing was scheduled on October 27, 1993, but the court did not approve the settlement. Appellant concludes this seven-month period should operate to toll the limitations period. However, her only cite to the record is to a declaration her attorney submitted with her motion for reconsideration. No assignment of error is made on appeal with respect to the trial court's denial of reconsideration, and appellant fails to show why this factual matter was not presented to the trial court in connection with the petition to compel arbitration. Additionally, her attorney's declaration in the reconsideration motion conflicted with the declaration of the same attorney submitted with appellant's reply papers in the petition to compel arbitration, wherein the attorney attested: "In 1993, a settlement was made, but was withdrawn." It is not clear who withdrew from the settlement, or when it happened. Allstate notes in its respondent's brief on appeal that no explanation of what happened has ever been provided to the trial court. We therefore reject appellant's assertion that she was prevented from proceeding with arbitration by pendency of the minor's compromise hearing.

Moreover, even if we were to toll the five-year period for seven months, that does not help appellant. Thus, extending the period for seven months from March 1996 would yield a deadline of October 1996 for completing arbitration. Appellant did not complete arbitration by October 1996. Thus, appellant fails to explain how a seven-month extension would help her.

We conclude appellant fails to show any basis for reversal of the trial court's decision.

## DISPOSITION

The judgment (order) is affirmed. Allstate shall recover its costs on appeal.

Davis, J., and Nicholson, J., concurred.

On August 18, 1998, the opinion was modified to read as printed above.